## ARGUED AND DETERMINED

### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT TALBOTTON,

### JANUARY TERM, 1847.

4.—FELIX G. ARNETT, plaintiff in error, *vs.* MAURICO CLOUD, WM. WILLIAMS, CAROLINE WHALEY, Adm'x, and JAMES KENT, Constable 513th Dist. G. M. defendants in error.

[1.] If an execution is paid by the Justice of the Peace or other collecting officer to the plaintiff, without stipulating at the time that it is to be kept open for his benefit, it is *functus officio,* and cannot afterwards be levied for the re-imbursement of said officer.

Injunction in Decatur Superior Court. Motion to dissolve in vacation, the defendants' answers having come in; argument had thereon before Judge Warren at Chambers, in July, 1846, and motion allowed.

For the facts, as disclosed by the bill and answers, and the errors assigned, see the opinion of the Supreme Court.

SNEED & HAYS for the plaintiff in error.

No Counsel appeared for the defendants.

*By the Court.*— LUMPKIN, J. delivering the opinion.

The plaintiff in error, filed his bill in Decatur County, setting forth the following facts. That on the 18th day of May, 1841, four small *fi. fas.* were issued from the Justice's Court of the 513th District, G. M. by Daniel M. Whaley, then the acting Magistrate

of said district, in favour of William Williams; one for thirty dollars, with interest from the 1st of January, 1840, and costs of suit; one for eleven dollars, with interest from the same date and costs, against the complainant and Absalom Johnson; the other two *fi. fas.* were against Wilson Ellis, James Donalson, and the complainant, for thirty dollars each, with interest and costs. That the two last executions were paid off shortly after they were issued, by the complainant, to the then constable of the district. That about the time these suits were commenced, the complainant, by his attorneys Hays and Crossland, placed in the hands of Whaley, the Justice of the Peace, a large amount of notes amounting to the sum of one hundred and fifty dollars, and on solvent individuals residing in the county; a sufficiency of the proceeds of which, when realized, were to be applied to the satisfaction of the two *fi. fas.* against complainant and Absalom Johnson. That Whaley did, in fact, collect the larger portion of these assets, and more than enough to discharge the balance of the debt to Williams. That in addition to this, shortly after the executions issued, Howell Hearn, the bailiff of the district, advanced, either to Williams or Whaley, twenty-four dollars and fifty cents, to the credit of the complainant, and that complainant himself handed thirty dollars to Whaley for the same object. That Whaley never accounted to him but for ten dollars. That Whaley died in the summer of 1844, and that Caroline Whaley has been duly qualified as the administratrix on the estate. That complainant has no receipt from Whaley, either for the cash paid, or the notes deposited in his hands for collection. He trusted that Whaley would have filed away in his office the two executions against himself and Johnson, as being fully paid off. That there were no other judgments or executions in the hands of Whaley against him. That on the 9th day of June, 1844, William Williams, the plaintiff in the two executions against Johnson and himself, transferred the same to Maurice Cloud; and that they have been levied by James Kent, constable of the district, on the property of the complainant. Cloud, the bill alleges, was indebted to the complainant at the time he took the assignment, and was notified by complainant that he would not allow him to set off this indebtedness with these executions, for the reason that they were already paid off; which fact is charged to have been within the knowledge of Cloud.

The defendants, in their answer, denied every fact and circumstance which entitled the complainant to the aid of a Court of

Chancery. Maurico Cloud admitted, that he purchased the two executions, not of Williams the plaintiff, but of Whaley the Justice of the Peace, who stated that he had before that time advanced the money due thereon to Williams out of his own pocket; and to save a circuity of assignments, it was agreed that Williams should transfer directly to Cloud, instead of to Whaley, and Whaley to Cloud. Williams admitted, that he had long since been paid off by Whaley, and consented to make the transfer to Cloud, to enable Whaley "*to right himself out of Arnett.*" It does not appear from the answer of the defendants, that there was any understanding, at the time Whaley settled the executions with Williams, that they should be kept open, or the control given to him for his re-imbursement. Indeed, from the minute account which is detailed of what transpired between all the parties at the time, it is plainly to be inferred, there was no such agreement.

It appears from the record sent up, that Arnett made first an affidavit of illegality to the executions, on the ground of payment; and that the judgments, both of the Justice's Court and of the Superior Court, upon *certiorari*, were against him.

An order was taken at Chambers in July, 1846, calling upon the complainant to show cause on a given day therein stated, why the injunction should not be dissolved, on the ground that the equity contained in the bill was denied and fully sworn off; and upon the hearing, the rule was made absolute, and leave given at the same time to the complainant to amend his bill.

Had the transcript of the record and the bill of exceptions [1.] exhibited nothing further, we should cheerfully affirm, *as we do*, the judgment of the Court below, in the interlocutory decree which it made. It would seem, however, from the bill of exceptions which Judge Warren has signed and certified as containing a true account of what transpired in the cause before him, that there were other points made and adjudicated, which do not otherwise appear than in the bill of exceptions. It would seem that the complainant in the bill, insisted that the two *fi. fas.* against Johnson and himself were "*killed*" by the satisfaction made by Whaley to Williams; and that consequently, the latter had no right to give the control.

And in the judgment of this Court that is a sound position. In Reed against Pruyn and Staats, 7 John. R. 427, the Supreme Court of the State of New-York, held, that a Sheriff cannot, with his own money, pay the plaintiff an execution and afterwards levy

the same out of the property of the defendant; and *Chancellor* (then *Ch. J.*) Kent, in delivering the judgment of the Court, said—"Such management of the process of execution by the officer, is not to be permitted. It is liable to infinite abuse and oppression. The law has long since, and very wisely, guarded against such application of its process. Such humanity is imposing, but it may be turned into cruelty. Nothing is more important to the honour of the adminis- tration of justice, than that the officers of the Court should not use its process as the means of making unequal bargains, and taking undue advantage."

The Chief Justice cites the case of *Waller* vs. *Weedale, Noy*, 107, where it was laid down by the *Chief Baron*, that the Sheriff on *fi. fa.* cannot detain the goods taken, upon an execution in his own hands, and satisfy the debt of his own proper money, " a grand inconvenience might ensue if the Sheriff himself might de- tain them;" and adds, that this ancient case received strength and credit in *Langdon* vs. *Wallis*, (1 *Lutw.* 589,) when it was cited as good law by such counsel as Sergeants *Wright* and *Lutwyche.* In this last case, it was observed, that the law requires of Sheriffs a strict execution and observance of writs, as their authority was to *sell the goods*, and this doctrine appeared to be approved by the decision of the Court.

The payment then, of the two executions to Williams the judg- ment creditor, by Whaley the Magistrate, (constituted by law, *pro hac vice* a collecting officer,) not being a conditional, but an abso- lute discharge, was a satisfaction of the debts, and therefore, the executions were spent and could not be used for the benefit or re- imbursement of the officer. See also *Millard* vs. *Canfield,* 5 *Wend. R.* 61 ; *Jackson* vs. *Anderson,* 4 *Ib.* 474 ; *Swan* vs. *Saddlemire,* 8 *Ib.* 676; *Armstrong* vs. *Garrow,* 6 *Cowen R.* 465.

All we can do then is to remand the case, with this distinct de- claration of opinion upon the matter of law, contained in the bill of exceptions.